UNITED STATES of America, Plaintiff,

v.

223.50 ACRES OF LAND, MORE OR LESS, SITUATED IN LOWNDES COUNTY, STATE OF MISSISSIPPI, and Dora Estes Hill, Farrell Wiygul, Adele Wiygul, Unimap, Inc., Jack Pribble, Kate Green, First Columbus National Bank, Defendants.

No. EC 77–114–S (Tract No. 944).

United States District Court,
N. D. Mississippi, E. D.

March 9, 1979.

William M. Dye, Jr., Asst. U. S. Atty., Oxford, Miss., for plaintiff.

DeWitt T. Hicks, Jr., Gholson, Hicks & Nichols, Columbus, Miss., for Farrell Wiygul, Adele Wiygul, Jack Pribble and Unimap.*

Henry T. Holifield, Columbus, Miss., Gary L. Geeslin, Threadgill & Smith, Columbus, Miss., for bank.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

The Commissioners' Report in the action sub judice, was filed on July 24, 1978.

Plaintiff and defendant have filed objections to the report. The plaintiff's objections were filed September 29, 1978. The objections of defendant were filed September 21, 1978. At the same time, defendant filed a motion to set aside or modify the report of the commissioners.

There has been filed a transcript of the proceedings before the commissioners. Both parties have submitted elaborate and extensive briefs. The matter is now ripe for decision.

The commissioners were appointed pursuant to Rule 71A(h), Fed.R.Civ.P. The rule provides that the commissioners are vested with the powers of a master as enumerated in subdivision (c) of Rule 53, Fed.R.Civ.P. The proceedings are governed by paragraphs (1) and (2) of subdivision (d) of Rule 53.

The report of the commissioners has the effect and must be dealt with by the court in accordance with the practice prescribed in paragraph (2) of subsection (e) of Rule 53.

The parties have complied with the provision of Rule 53 relative to the filing of objections. The command of Rule 53(e)(2) is "In an action to be tried without a jury the court shall accept the [commissioner's] findings of fact unless clearly erroneous." It is by this guidepost that the court has given consideration to the report, objections thereto, and defendant's said motion.

The record reveals a wide disparity in the testimony of the witnesses as to the amount of just compensation for the taking.

The landowner introduced five witnesses. The just compensation assessed by them ranged from $520,650 (the landowner's estimate) to $293,750. The plaintiff introduced three value witnesses. The just compensation assessed by them varied from $48,170 to $60,150. The commissioners awarded $79,000.

The testimony of the several witnesses is summarized as follows:

| Defendant's Witnesses | Before | After | Just Compensation |
|---|---|---|---|
| 1. Dr. Farrell B. Wiygul, Landowner | $687,500 | $166,850 | $520,650 |
| 2. Gerald Rye | 687,500 | 190,000 | 497,500 |
| 3. Jesse N. Moore | 412,500 | 118,750 | 293,750 |
| 4. James Lancaster | 481,250 | 166,250 | 315,000 |
| 5. M. M. McCarty | 548,000 | 56,400 | 491,600 |
| Average Just Compensation | | | $418,700 |

| Plaintiff's Witnesses | Before | After | Just Compensation |
|---|---|---|---|
| 1. Tommy M. Morgan | $105,000 | $ 56,300 | $ 48,700 |
| 2. John A. Davidson | 113,200 | 54,800 | 58,400 |
| 3. P. O. Beard | 112,375 | 62,225 | 60,150 |
| Average Just Compensation | | | $ 55,750 |

* Kate Green not represented by counsel.

The defendant's witnesses based their judgment on the amount of just compensation for the taking on the premise that the entire tract was suitable for immediate subdivision and recreational use. The plaintiff is taking 90 acres, leaving a remainder of 47½ acres. The commissioners rejected this approach. The court finds their rejection is justified by the record and supported by substantial evidence. Accordingly, the commissioners' findings in this regard are affirmed.

The commissioners found that the highest and best use of the property, on the date of the taking, considering such use in the reasonably foreseeable future, falls into three categories:

### I.

A. Ten (10) acres lying along the road frontage on the south, having an immediate future use as low density, rural-residential property, to be valued at the date of taking in an amount of Two Thousand Dollars ($2,000.00) per acre, or a total of Twenty Thousand Dollars ($20,000.00).

B. The improvements upon the aforementioned 10 acre tract of land, being the home occupied by Mrs. Green and the buildings within its curtilage, to be so valued in an amount of Twenty-Two Thousand, Five Hundred Dollars ($22,500.00).

C. Thirty-seven and one-half (37½) acres of land, proceeding from the aforementioned 10 acre tract, northwardly, along the level portion of this land, having such highest and best use as transitional (agricultural-rural residential) land, with an immediate use for pasture land, but with a use in the reasonably foreseeable future for low density, rural residential development, to be accomplished with a minimum of expense and risk to the developer, and to be so valued at the rate of Sixteen Hundred Dollars ($1,600.00) per acre, for a total value of this tract of Sixty Thousand Dollars ($60,000.00).

D. Forty (40) acres of land, proceeding from the tract last mentioned, northwardly to the bluff along the extreme northern end of the property, and eastwardly, across the level portion of this land and onto its slopes, which had such highest and best use also as transitional (agricultural-rural residential) land, in the manner of the land of the aforementioned 37½ acre tract. This land is not as level as that land in the aforementioned 37½ acre tract, and it is more remote from the paved highway, but it does have the bluff on the northern end of this property as an increment to its value, and therefore this tract is also valued at the rate of Sixteen Hundred Dollars ($1,600.00) per acre, for a total value of this unit in the amount of Sixty-Four Thousand Dollars ($64,000.00).

E. Fifty (50) acres of land, being that on the lower end of the slopes, and against the river, which had as its highest and best use, at the time of its taking, timber land, with a ratable value of Three Hundred Dollars ($300.00) per acre at the time of the taking, yielding a total value for this tract of Fifteen Thousand Dollars ($15,000.00).

The entire value of this total 173½ acre tract of land, immediately before the taking, is therefore found to be One Hundred Eighty-One Thousand, Five Hundred Dollars ($181,500.00).

### II.

The commissioners found the property remaining after the taking to include:

A. The aforementioned 10-acre tract of rural, residential land, valued at Two Thousand Dollars ($2,000.00) per acre, totaling Twenty Thousand Dollars ($20,000.00).

B. The aforementioned improvements, valued at Twenty-Two Thousand, Five Hundred Dollars ($22,500.00).

C. 37½ acres of the aforementioned transitional (agricultural-rural residential)

land, from the aforementioned 37.5 and 40 acre tracts of such land, valued at Sixteen Hundred Dollars ($1,600.00) per acre, or a total of Sixty Thousand Dollars ($60,000.00).

The entire value of the lands and improvements remaining total One Hundred Two Thousand, Five Hundred Dollars ($102,500.00), immediately after the taking. No value has been found for the unsevered timber upon the land taken, or remaining, except as it does constitute an enhancement of the value to these lands, generally.

### III.

The commissioners concluded:

We find, therefore, that just compensation should be awarded to the Defendant, as damages for this taking, in the total sum of Seventy-nine Thousand Dollars ($79,000.00).

The plaintiff's objection to the award focuses on the portion which allows $1,600 an acre for the two tracts (37½ acres and 40 acres), determined by the commissioners as having a best use of transitional property (agricultural-rural residential).

The plaintiff contends that the value placed on the transitional property by the commissioners is excessive; that the evidence will not sustain an award of more than $975 an acre for this part of the tract.

Plaintiff utilizes the valuation which it proposes for the transitional land to arrive at an overall figure of $60,000 as the amount of just compensation.

The record is replete with objections to evidence proffered by both parties. The rulings of the presiding officers do not appear to have prejudiced either party and to be well within the exercise of his discretion. The court does not find that any evidence introduced over the objection of either party has resulted in an injury to anyone. There is no just reason why the court should reverse the presiding officer on any of his ruling in regard to evidence presented the commissioners.

The court has read in its entirety the transcript of the proceedings before the commissioners and has given careful consideration to the memoranda submitted by counsel. The court has reviewed the entire file and is now well advised in the premises.

The award of just compensation on the basis of the record here presented is probably more than the court would have awarded; the court realizes, however, that the commissioners visited and viewed the land; also they observed the witnesses as they testified. The court holds that the findings of fact of the commissioners are not clearly erroneous.

In summary, the court finds that the Report of the Commissioners is proper, adequate and correct, based upon the entire record. The Report will be approved.